## Dillinger Estate

*J. Garfield Houston* and *Blaxter, O'Neill & Houston,* for accountant.

*Anne X. Alpern,* city solicitor, and *David Stahl,* assistant city solicitor, for City of Pittsburgh.

Cox, J., December 15, 1952.—The question to be decided in this case is, when a decedent's estate is being administered by two executors, one of whom resides in the City of Pittsburgh, Allegheny County, Pa., the domicile of decedent at the time of his death, and the other resides in the City of Greensburg, Westmoreland County, Pa., and decedent's property is being held by the executors in the City of Greensburg and decedent's estate being administered from Greensburg, is a tax which is levied by the City of Pittsburgh on securities in decedent's estate by reason of residence of one of decedent's executors in the City of Pittsburgh, under ordinance no. 486, approved December 1, 1947, as amended by ordinance no. 58, approved March 9, 1948, enacted pursuant to the Enabling Act of June 25, 1947, P. L. 1145, as amended, 53 PS §§2015.1, et seq., a valid tax?

The pertinent facts, which are not in disagreement, and as set forth in exhibit H, attached to the executors' petition for distribution of decedent's estate, are as follows:

"The decedent, Elizabeth S. Dillinger, died March 3, 1950. At the time of her death she was a resident of the City of Pittsburgh, Allegheny County, and had been since about 1936. Her will was probated in Allegheny County and letters of administration were granted to Matthew Watson, Jr., a resident of Greensburg, Westmoreland County, and George D. Hackett, a resident of Pittsburgh, Allegheny County, the executors named in the will.

"Prior to about 1936, the decedent was a resident of Westmoreland County, Pennsylvania. Her estate

was acquired under the will of her husband, Daniel Dillinger, who was a lifelong resident of Westmoreland County where he died in 1926 and where his will was probated and his estate administered.

"On May 28, 1934, Elizabeth S. Dillinger transferred all her assets to Matthew Watson, Jr., a resident of Greensburg, Westmoreland County, and George D. Hackett, a resident of Pittsburgh, Allegheny County, as trustees under a revocable deed of trust. At the time of the creation of the trust, all of the securities transferred to the trustees were located in Greensburg, Westmoreland County, and were deposited in Barclay Westmoreland Trust Company. From the creation of the trust in 1934 to the date of the decedent's death, all of the securities comprising the trust estate were located and held and managed in Greensburg, Westmoreland County, where the trustees maintained an office.

"The aforesaid deed of trust provided that upon the death of the donor, the trust was to terminate and the trust assets were to be delivered to the executors for administration under the will of the donor. Upon the death of the decedent, the trustees under the deed of trust transferred all of the assets of the trust estate to the executors, one of whom was a resident of Greensburg, Westmoreland County, and the other a resident of Pittsburgh, Allegheny County. The securities transferred to the executors remained on deposit in the Barclay Westmoreland Trust Company, and those that have not been converted as shown on the first account of the executors are still on deposit in that bank.

"After the death of the decedent, the executors took over the office of the trustees in Greensburg, Westmoreland County, and the administration of the estate has been conducted in that office."

The pertinent provisions of the Act of June 25, 1947, supra, are as follows:

"(a) The duly constituted authorities of the following political subdivisions; cities of the second class . . . cities of the third class . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes on . . . personal property within the limits of such political subdivisions as they shall determine . . . except that such local authorities shall not have authority by virtue of this act . . . (6) to levy, assess or collect a tax on personal property subject to taxation by counties . . . Provided, that this limitation (6) shall not apply to cities of the second class."

Under this statute the City of Pittsburgh, a city of the second class, is permitted to tax personal property subject to taxation by counties. The City of Greensburg, a third class city, is not.

It is admitted that securities taxed by the City of Pittsburgh are properly taxable by counties, and, therefore, of a class properly taxable by the City of Pittsburgh, but not by the City of Greensburg. The only claim for personal property tax on the securities in decedent's estate is the tax claim of the City of Pittsburgh.

The tax assessed against the securities in decedent's estate was assessed under ordinance no. 486, approved December 1, 1947, as amended by ordinance no. 53, approved March 9, 1948, enacted pursuant to the provisions of the Enabling Act of 1947, supra. Section 1 of this ordinance provides in part:

". . . a tax at the rate of two mills on each dollar is hereby imposed for the year 1948 and annually thereafter on the value of all personal property of the classes taxed by the County of Allegheny pursuant to the Act of June 17, 1913, P. L. 507, as amended, and

enumerated in Section 1 of said Act, owned, held or possessed by any resident, which as used in this Section shall mean any person, persons, copartnership or unincorporated association or company resident, located or liable to taxation within the City of Pittsburgh, or by a joint stock company or association, limited partnership, bank or corporation whatsoever formed, created or incorporated by, under or in pursuance of any law of the Commonwealth of Pennsylvania or of the United States, or of any other State or Government, and liable to taxation within the City, whether such personal property be owned, held or possessed by such resident in his own right or as active trustee, agent, attorney-in-fact, or in any other capacity or by any resident as trustee agent or attorney-in-fact jointly with one or more trustees, agents or attorneys-in-fact domiciled outside of the City where such personal property is held and managed in this City, except as executor or administrator of the estate of a non-resident decedent and except as trustee for a resident or non-resident, religious, charitable or educational organization, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or for the use, benefit or advantage of any other person, copartnership, unincorporated association, company, joint stock company or association, limited partnership, bank or corporation; . . . ."

Section 2 of ordinance no. 486 provides that the city shall accept the return filed with the Allegheny County Board of Property Assessment, Appeals and Review, as the tax return for the City of Pittsburgh.

"Statutes imposing taxes receive, at the hands of the courts, a strict construction. The words used should be clear and unambiguous, their meaning not extended by implication. If a doubt arises, the construction should be against the government: Com. v. P. R. T. Co., 287 Pa. 190, 196; 134 A. 455; Leopold Tax Assess-

ment Case, *supra*": Dixon's Case, 138 Pa. Superior Ct. 385, 389. This principle is affirmed in Dorrance's Estate, 333 Pa. 162, 171; 9 A. 2d. 682.

The criterion governing the construction of tax statutes is concisely set forth in the following language in Callery's Appeal, 272 Pa. 255, 272:

"In construing statutes relating to taxation, three rules must be steadily borne in mind: (1) no tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs; (2) where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption; (3) provisions relating either to imposition or of exemption from a tax, are to be construed as to give effect, as nearly as reasonably may be, to the common law duty to tax equitably and ratably all those within the given class." This principle was affirmed in Thaw's Estate, 163 Pa. Superior Ct. 484, 488.

The basis for the executor's contention that the tax assessed by the City of Pittsburgh against decedent's securities is invalid is as set forth in exhibit H, attached to the petition for distribution, in the following language:

"The executors deny liability for personal property taxes to the City of Pittsburgh for the reason that the Act of June 25, 1947, P. L. 1145, 53 P. S. 2015.1, limits the right of the City of Pittsburgh to assess personal property taxes only against personal property located within the territorial limits of the City of Pittsburgh; and, as above stated, the securities comprising the estate of this decedent are located and held in Greensburg, Westmoreland County."

The City of Pittsburgh asserts in support of the validity of its tax claim that under the doctrine of mobilia sequuntur personam, by reason of residence

of one of decedent's executors in the City of Pittsburgh, the securities in decedent's estate are taxable by the city.

Decedent's executors are fiduciaries who hold title to the personal property of decedent for the purpose of administering it. " 'Each has an undivided moiety of the whole, and not the whole of an undivided moiety. . . . The interest of two joint tenants is not only equal or similar, but also is one and the same. . . . While it continues, each of two joint tenants has a concurrent interest in the whole; . . .' ": Haggerty's Estate, 311 Pa. 503, 506; 166 Atl. 580. The Enabling Act of 1947, supra, contains no provisions which expressly refer to taxation of personal property held by joint tenants one of whom resides within a political subdivision empowered to tax personal property.

In Dorrance's Estate, 333 Pa. 162, 3 A. 2d 682, the Supreme Court of Pennsylvania considered the provisions of the Enabling Act of 1947, supra. Section Pennsylvania under the Personal Property Tax Act of June 22, 1935, P. L. 414, 72 PS §§3242 et seq., against securities held by four trustees. Three trustees were persons, one of whom resided in Delaware County, one in Philadelphia, and one in Montgomery County. The fourth trustee was a trust company incorporated in New Jersey, with its principal office in Camden, N. J. It was not authorized to engage in business in Pennsylvania. Decedent was domiciled in Pennsylvania. The trust property was held in the office of the trust company trustee, and the trust was administered from its office. The State of Pennsylvania taxed three fourths of the value of the trust property by reason of the residence of three of the four trustees in Pennsylvania, although the Pennsylvania personal property tax statute made no provision for proportionate assessment. The trustees appealed from this assessment. The assessment was sustained in the lower court, and

on the appeal of the trustees to the Supreme Court of Pennsylvania their appeal was sustained and the assessment of the tax held to be invalid. In its opinion the court said (pages 168-70, 172):

"As the property is of the class generally described as 'intangible' and as we are dealing with resident and also nonresident trustees, it is necessary, in considering the appeal, to have in mind what was said by the Supreme Court in Safe Deposit & Trust Company of Baltimore v. Commonwealth of Virginia, 280 U. S. 83, 92, in considering the power to tax trust property of that character: 'Ordinarily this Court recognizes that the fiction of mobilia sequuntur personam may be applied in order to determine the situs of intangible personal property for taxation: Blodgett v. Silberman, 277 U. S. 1. But the general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise . . . (citing cases). . . . Here, where the possessor of the legal title holds the securities in Maryland, thus giving them a permanent situs for lawful taxation there, and no person in Virginia has present right to their enjoyment or power to remove them, the fiction must be disregarded. It plainly conflicts with fact; the securities did not and could not follow any person domiciled in Virginia. Their actual situs is in Maryland and can not be changed by the cestui que trustent'. See also Wheeling Steel Corp. v. Fox, 298 U. S. 193.

"Accordingly, we must inquire whether, as contended by the appellants, the record shows that a trust was established in New Jersey to be administered there, with trust property maintained there, without control elsewhere, and whether the trust is being administered there; in other words, whether New Jersey

may be regarded as the 'trust domicile' if that term may be used.

"The established fact is that the property is identified as trust property and is located and administered at the trust domicile. The will clearly shows that such administration of the trust in Camden, New Jersey, was intended by the testator. By far the larger part of trust property was and is invested in the capital stock of the Campbell Soup Company all of which belonged to testator and which by his will he provided should be conserved for purposes there stated. The will conferred on the trustees extensive powers for the investment of trust funds in aid of the company. . . .

"The statute authorizes a tax on personal property owned, held or possessed by any resident in his own right or as trustee. The legal title to the property assessed is not in any resident of Pennsylvania but in the four trustees, one of them, the corporate trustee, ness in Pennsylvania. They hold the trust property as a unit in the State of New Jersey. The ownership, not engaged in, and having no right to engage in busi- holding or possession of the trust property is therefore not within the words of the statute; it contains no provision for dividing such trust property among resident and non-resident trustees for purposes of this tax. The taxing officers realize that the facts presented show a case that is not within the words of the statute but endeavor to bring the property within its provisions by construing it as if the legislature had said that in the case of resident and non-resident trustees a proportionate part should be taxed here. In so construing the statute, we think, for various reasons, that the taxing authorities and the learned court below reached a result which the statute does not allow. The familiar rule is that unless property is clearly within a taxing statute, it is not taxable: Arbuckle's Estate, 324 Pa. 501, 505, 188 A. 758.

"The learned court below recognized that the trustees held by joint tenancy but, apparently treating them as tenants in common, concluded that the 'undivided three-quarters interest in the trust assets held by individual residents of the State of Pennsylvania is taxable under the . . .' statute. The legislature has not attempted to authorize a division of the joint tenancy title. . . .

"On the other hand, there are cases which support appellants' view that the trust is a unit and will not be divided in the absence of statute requiring it. In People v. Coleman, 119 N. Y. 137, 23 N. E. 488, the statute provided: ' ". . . all debts and obligations for the payment of money due or owing to persons residing within this state, however secured, or wherever such securities shall be held, shall be deemed, for the purposes of taxation, personal estate within the state, and shall be assessed as such to the owner or owners thereof in the town, village or ward in which such owner or owners shall reside. . . ." ' The state assessed bonds and mortgages composing the trust property held by three trustees, two residing in New York and one in New Jersey. The securities were in the physical possession of the New Jersey trustee. In holding that such property was not taxable under the statute quoted, Peckham, J., said: 'The case here presented is one where the persons assessed are not the absolute owners of the property, but are trustees, and have only a representative or official interest therein, and but two out of the three are residents within the state, while a third resides in another state and also has the custody and control of the property, and the beneficiaries are also nonresidents. Does the·act of 1883 meet such a case? We think not. It is not a debt due and owing to persons residing within this state, for it is one which is due or owing to them in connection

with another who is a joint owner, and who is not a resident within this state and such other has possession of the securities. The statute means that the debt must be one which is solely due or owing to residents of this state'.

"In Newcomb v. Paige, 224 Mass. 516, 113 N. E. 458, the statute involved provided: ' "Fifth, Personal property held in trust by . . . trustee, the income of which is payable to another person, shall be assessed to the . . . trustee in the city or town in which such other person resides, if within the commonwealth; and if he resides out of the commonwealth it shall be assessed in the place where the . . . trustee resides; and if there are two or more . . . trustees residing in different places, the property shall be assessed to them in equal portions in such places. . . ." '

"The case involved a trust of which there were three trustees, one resident in Massachusetts, one in California, and one in New York. All of the securities were kept in New York in the custody of the New York trustee. An assessment was made against the Massachusetts trustee for one-third of the property. In the course of an opinion holding the assessment void, Rugg, C. J., said (p. 520) ; 'When there are several trustees, one or more of whom is domiciled in the State of origin of the trust, and the corporeal custody of the securities of the trust is with that trustee at his domicil, and the title of the trustees is joint and their powers must be exercised as a unit, there is no such several ownership in one trustee resident outside the state of the establishment of the trust, but resident in Massachusetts, as brings him within the scope of our tax law as to the trust property. St. 1909, c. 490, pt. 1, section 23. Under these circumstances he alone as resident of this commonwealth does not hold the title as owner within the commonwealth in such sense as to bring him within the terms of the tax act. He cannot exercise

456

ownership as a resident in this Commonwealth, but only by conjoint action with his fellow trustees, none of whom are resident here, as to a fund in substance in the custody of the courts of another jurisdiction. His ownership is not of such character as to bring the taxable domicil of the trust within the terms of our law.' See also Hawk v. Bonn, 6 Ohio C. C. 452; Goodsite v. Lane, 139 Fed. 593 (C. C. A. 6th Ct.).

"In the circumstances, it is also unnecessary to consider appellant's contention that the trust property had acquired a 'business situs' in New Jersey and was therefore not within the statute."

Although in the instant case the tax was assessed by a political subdivision of the Commonwealth of Pennsylvania, while in Dorrance's Estate, supra, the tax was assessed by the Commonwealth itself, the cases are similar in that each cofiduciary resided in different political subdivisions and the tax was assessed by a taxing authority in which the cofiduciary which held the personal property did not reside. A further similarity is that neither the taxing statute of Pennsylvania nor the Enabling Act of 1947, under which the city taxing ordinance was passed, contain any provision authorizing proportional assessment or taxation in the event that one of two or more fiduciaries who jointly hold personal property should live outside the jurisdiction of the taxing authority.

The principle applied in Dorrance's Estate, supra, in solving the problem therein construed, which for all practical purposes is identical with the problem we are considering, may be applied with equal cogency in the instant case.

We find, therefore, by reason of the joint tenancy by which decedent's personal estate is held by his two executors, the physical presence of the personal property taxed in the City of Greensburg, the administration of decedent's estate from that city, the absence

of provisions in the Enabling Act of 1947 which would govern a situation resulting from the aforementioned facts, that the doctrine of mobilia sequuntur personam is not applicable to a determination of the situs of decedent's intangible personal property for tax purposes, its situs is in Greensburg, where it is held and the personal property tax assessed by the City of Pittsburgh against the securities in decedent's estate is invalid. The tax claims of the City of Pittsburgh against decedent's estate are therefore denied.

In our study of tax legislation during the preparation of this opinion we found many instances in which tax statutes, having been found deficient, were amended to remedy the defects. This is particularly true of the history of the personal property tax imposed by the Commonwealth of Pennsylvania for the purpose of providing revenue for counties. The remedy, therefore, for an omission in the Enabling Act of 1947, supra, lies in legislative amendment, and not in judicial construction.

Although we have found that the doctrine of mobilia sequuntur personam is not applicable to the facts in the instant case, we do not desire that this finding shall be construed to affirm the position of the executors that the Enabling Act of 1947 does not permit the taxing of intangible personal property solely because it is not physically within the geographic limitations of the political subdivision empowered to tax personal property by the Enabling Act of 1947.

For this to be so, it would be necessary that the legislature clearly express its intent to modify the doctrine of mobilia sequuntur personam by making it inapplicable to every situation in which a resident of a political subdivision permitted to tax personal property by the Enabling Act of 1947 owned, held, or possessed intangible property which was not within the limits of the political subdivision. The phrase "within the

458

limits of such political subdivision", contained in the Enabling Act of 1947, supra, does not with sufficient clarity and unambiguity express the intent of the legisture that the doctrine of mobilia sequuntur personam be modified to permit us to hold that political subdivisions permitted to tax personal property by the act can only tax intangible personal property physically located within the confines of said municipality.

Illustrative of the meaning the writer wishes to convey in the above discussion, if a decedent's estate was being administered by one executor who is a resident of a political subdivision empowered to tax personal property under the Enabling Act of 1947, supra, and a tax was properly levied by the political subdivision in which he resided on intangible personal property held by him in his fiduciary capacity, although the intangible personal property was not physically within the limits of the subdivision, the doctrine of mobilia sequuntur personam would apply and the situs of the intangible personal property held by the executor would be the political subdivision in which he resided. The test is not the physical location of the intangible personal property taxed, but the residence of the executor.

In the Estate of John Henry Palmer, no. 1222 of 1947, the writer as auditing judge allowed a tax claim assessed by the City of Pittsburgh against decedent's estate. The claim was based on an assessment under the same tax ordinance we are considering in the instant case against securities held by decedent's executor, a nonresident of the City of Pittsburgh. The securities were kept in Pittsburgh and decedent's estate was administered from Pittsburgh. The writer allowed the tax claim of the City of Pittsburgh on the theory that the presence of the taxed property in Pittsburgh and the administration of decedent's estate from Pitts-

burgh, and not the residence of the executor in another political subdivision, was the controlling factor and established the City of Pittsburgh as the situs of the securities for tax purposes. This decision, we believe, was in error. Under the doctrine of mobilia sequuntur personam as applied to this factual situation the situs of the securities for tax purposes was the political subdivision in which the executor lived, and the City of Pittsburgh was without authority to tax the securities. Although no exceptions were filed to the writer's decision and the city's tax claim was paid, the writer acknowledges that he was in error in allowing the tax claim and ordering it paid, in order that this case will not be taken as a precedent for future taxation of intangible personal property held under the same circumstances.